**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RACHEL D. BINAKONSKY, on behalf of herself and all others similarly situated,<br><br>            Plaintiff<br><br>      v.<br><br>JM Brands, INC.,<br><br>         Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 2:21-CV-444-NR |

## OPINION

**J. Nicholas Ranjan, United States District Judge**

Up until about 2019, JM Brands advertised its PureZero hair care products as "Natural Haircare."  The bottles displayed this slogan prominently below the brand name, and specified that there were "ZERO Sulfates, Parabens, Dyes, Phosphates, Phthalates [or] Gluten."

Over several years – most recently in December 2019 – plaintiff Rachel Binakonsky purchased at least two types of PureZero products from various retail stores. ECF 1, ¶ 47. After reading the front labels, Ms. Binakonsky interpreted 'natural' to mean that the products contained no synthetic ingredients. *Id.* The back of the bottles enumerated the full ingredients list in finer print, but Ms. Binakonsky did not examine the back labeling thoroughly. *See id.* Later, Ms. Binakonsky discovered that the products she purchased did in fact include synthetic ingredients. *Id.* at ¶ 20. Feeling deceived, she sued JM Brands for false advertising, on behalf of herself and other potential class members who purchased PureZero products.[1]

JM Brands moves to dismiss all four counts in the Complaint, raising three main arguments. First, it argues that federal product-labeling law preempts Ms. Binakonsky's claims. Second, it argues that Ms. Binakonsky lacks standing to bring her claims. Third, it argues that a heightened pleading standard applies, and that Ms. Binakonsky accordingly fails to state her claims. After carefully considering the parties' arguments and relevant law, the Court will grant the motion in part and deny it part. Specifically, the Court will deny the motion, except as to the claims based on implied warranty and "advertising/marketing" practices.

<u>DISCUSSION & ANALYSIS</u>

I.   **Ms. Binakonsky's claims are not preempted, and the Court declines to invoke primary jurisdiction.**

The FDA is the entity with the primary authority to determine whether a cosmetic is misbranded.[2] However, the FDA has not yet issued a clear definition of

---

[1] The Complaint asserts four counts: (1) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1 et seq. (the "UTPCPL"); (2) breach of express warranty; (3) breach of implied warranty of merchantability; and (4) unjust enrichment.

[2] *See* www.fda.gov/cosmetics/cosmetics-guidance-regulation.

"natural" as applied to cosmetics.  JM argues that the Food, Drug, and Cosmetic Act (FDCA) and the FDA's regulatory scheme preempt a private plaintiff from bringing a lawsuit that turns on whether a product is "natural."  ECF 11, pp. 8-10.  In the alternative, JM asks the Court to invoke primary jurisdiction and refer the matter to the FDA for clarification, given the agency's subject matter expertise.  *Id.*  But consumer protection is an area of traditional state police power.  Accordingly, there is a presumption against preemption by federal statute.  *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) ("In all pre-emption cases, and particularly those in which Congress has legislated in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." (cleaned up)); *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334-35 (3d Cir. 2009) ("In areas of traditional state regulation, we assume that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest. This requires that, if confronted with two plausible interpretations of a statute, we have a duty to accept the reading that disfavors pre-emption." (cleaned up)).  The Court finds that JM has not overcome this presumption, for at least three reasons.

First, contrary to JM's argument, Ms. Binakonsky is not seeking a different labeling requirement, which would raise express preemption concerns.  JM argues that Ms. Binakonsky seeks to impose a labeling requirement that is "different from or in addition to" FDA requirements, which would squarely conflict with the FDCA. ECF 14, pp. 4-5.  Not so.  The PureZero bottles already list the ingredients, and Ms. Binakonsky is not requesting that the label be required to disclose which ones are synthetic.  *See generally* ECF 1.  Instead, she seeks damages for being misled by the label of "natural."  *Id.* at ¶ 121.  Thus, her claim does not run afoul of the FDCA.  *Lee v. Conagra Brands, Inc.*, 958 F.3d 70, 77 (1st Cir. 2020) (declining to apply preemption where the complaint sought "damages resulting from [defendant's] alleged

misrepresentation" and plaintiff did "not request a specific, court-ordered label," since defendant "would not be required to disclose affirmatively whether [the product] contains GMOs"); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 758 (9th Cir. 2015) (declining to apply preemption where plaintiff claimed "deception as a result of advertising statements that contradicted the true ingredients listed on the FDA-mandated label").[3]

Second, field preemption doesn't apply.  JM contends that the FDA's regulatory scheme "occupies the field," and that the FDA's failure to regulate the term "natural" is itself a regulatory decision – that is, a conscious decision *not* to regulate.  ECF 14, pp. 4-5.  But "[t]here is no federal preemption *in vacuo*. … [M]ere deliberate agency inaction – an agency decision *not* to regulate an issue – will not alone preempt state law." *Fellner v. Tri-Union Seafoods, LLC*, 539 F.3d 237, 247 (3d Cir. 2008).  Instead, "congressional intent to supersede state laws must be 'clear and manifest,'" even if a regulatory scheme seems detailed.  *Holk*, 575 F.3d at 336, 339 (cleaned up).

Agency policy statements and correspondence also cannot occupy the field.  *See* ECF 11, p. 20; ECF 14, p. 5 n.1.  That's because only traditional notice-and-comment rulemaking provides the requisite "'fairness and deliberation' which would suggest that Congress intended the agency's action to be a binding and exclusive application of federal law." *Fellner*, 539 F.3d at 237 (citations omitted).  Therefore, "[s]tate law

---

[3] In some cases, an injunction imposing a labeling requirement could be preempted by the FDCA.  But that doesn't seem to be a serious risk in this case.  To begin with, as JM has argued, it has stopped using the term "natural" on its products, so there is nothing to enjoin.  ECF 11, pp. 4-5.  But even if an injunction were warranted, a prohibitory injunction restraining the use of a certain term or word on a bottle is materially different than a mandatory injunction requiring an affirmative representation on the bottle.  Ms. Binakonsky seeks the former, which doesn't give rise to a conflict with federal labeling requirements.  *See Astiana*, 783 F.3d at 758 ("[Plaintiff] is not asking [Defendant] to modify or enhance any aspect of its cosmetics labels that are required by federal law.").

is not preempted whenever an agency has merely 'studied' or 'considered' an issue; state law is preempted when federal *law* conflicts with state law."   *Id.* at 254 (emphasis in original).  So JM cannot rely on previous policy statements or advisory letters as a basis for preemption.  *Holk*, 575 F.3d at 340 ("the FDA's policy statement regarding use of the term 'natural' is not entitled to preemptive effect.").

Third, conflict preemption does not bar Ms. Binakonsky's claims, either. There is no reason why it would be "impossible for a private party to comply with both state and federal requirements," and the state law does not "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Holk*, 575 F.3d at 339 (cleaned up).  All JM would have to do – and what it *did* do – is remove the term "natural" from its packaging.  ECF 11, p. 11.

In any event, JM argues that the FDA is the superior body to resolve this issue and encourages the Court to refer the question to the agency by invoking primary jurisdiction.  But that's a prudential doctrine, not a jurisdictional limitation, "as the court has discretion to retain jurisdiction[.]"  *Janney v. Mills*, 944 F. Supp. 2d 806, 811 (N.D. Cal. 2013).  Of course, the FDA has more expertise in cosmetics ingredients than this Court does.  But each time this question has arisen, the FDA has failed to take it up.  *Id.* at p. 812-13 (collecting examples); *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1034 (N.D. Cal. 2009) ("at the time the FDA declined to formally define 'natural' it was aware of and had reviewed state regulation and use of the term, yet it made no mention of the need for uniformity or a preemptive federal regulation[.]").  Instead, it has repeatedly issued responses such as "priority cosmetic public health and safety measures are currently fully occupying the resources that the FDA has available for proceedings on cosmetic matters and proceedings to define 'natural' do not fit within the agency's current health and safety priorities."  *Astiana*, 783 F.3d at 760 (cleaned up).  As the Ninth Circuit explained, "[c]ommon sense tells us that even when agency expertise would be helpful, a court should not invoke

- 5 -

primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation." *Id.* at 761.  It is likely that waiting for FDA guidance – which might never come – would needlessly delay the resolution of claims, thereby negating one of the principal purposes of primary jurisdiction.  *United States v. Philip Morris USA Inc.*, 686 F.3d 882, 838 (D.C. Cir. 2012) ("The primary jurisdiction doctrine is rooted in part in judicial efficiency.").

Moreover, primary jurisdiction is meant to apply only in limited circumstances, such as issues of first impression or matters to which courts aren't well suited.  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (2d Cir. 2008) ("[T]he doctrine is not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit." (cleaned up)).  As discussed above, this is not an issue of first impression.  Further, this case does not turn on technical scientific questions; it turns on whether JM's labels and advertising techniques were misleading to average consumers.  And "the reasonable-consumer inquiry upon which some of the claims in this case depends is one to which courts are eminently well suited, even well versed."  *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1380 (S.D. Fla. 2014) (quoting *In re Frito-Lay N. Am., Inc. All Natural Litigation*, No. 12-2413, 2013 WL 4647512, at *8 (E.D.N.Y. Aug. 29, 2013)); *Lockwood*, 597 F. Supp. 2d at 1034. Accordingly, primary jurisdiction is both unnecessary and inadvisable in this instance.

## II.  Ms. Binakonsky has standing as to the products she purchased, and the issue of standing as to other products is better addressed at the class certification stage.

Ms. Binakonsky alleges that she suffered economic injury because the misrepresentation on PureZero labels induced her to pay more money than she would have otherwise, and she received products worth less than what had been promised. ECF 1, ¶¶ 12, 40-41; ECF 13, pp. 3-4.  This is sufficient to confer standing, at least as

to the products Ms. Binakonsky purchased.  *See Baynes v. George E. Mason Funeral Home, Inc.*, No. 09-153, 2011 WL 2181469, at *5 (W.D. Pa. June 2, 2011) (Gibson, J.) (ascertainable injury existed where plaintiff claimed he was induced into buying a casket that was steel, though it had been advertised as bronze).

JM argues that Ms. Binakonsky lacks standing because she does not allege that the products "deviated from their intended purpose" – to clean hair – or were not worth the $6 price.  ECF 11, p. 6.  Whether the products cleaned hair or not is immaterial to the standing analysis.  Just because the PureZero products physically functioned does not mean they were the all-natural products Ms. Binakonsky believed she was purchasing.  She did allege the products were not worth the price; in fact, Ms. Binakonsky alleges that she would not have purchased PureZero products at all if she had known they contained synthetic ingredients.  ECF 1, ¶ 47.  Thus, the amount she paid for the product is the ascertainable loss.  *Lisowski v. Henry Thayer Co., Inc.*, 501 F. Supp. 3d 316, 338 (W.D. Pa. 2020) (Horan, J.) ("[Plaintiff] purchased [] products he believed to be natural and preservative-free based on [Defendant's] alleged deceptive conduct.  The products were allegedly not natural and preservative-free.  Therefore, because of the deception, he did not receive the product he thought he was buying.  [Plaintiff] has sufficiently alleged an ascertainable loss, the amount he paid for the product, to survive a motion to dismiss.").

Ms. Binakonsky purchased two PureZero products but alleges that 19 product labels were misleading; this encompasses all PureZero products with the tagline "Natural Haircare."  Because Ms. Binakonsky states these legal claims as to at least two of these products, she has individual standing.  But whether she can represent a class as to other products that would fall within that claim is better addressed at the class certification stage.  *Munsell v. Colgate-Palmolive Co.*, 463 F. Supp. 3d 43, 52 (D. Mass. 2020) ("The majority view is...that a plaintiff has standing to assert claims on behalf of putative class members relating to products that she did not purchase if

plaintiff sufficiently alleges that the products and the alleged misrepresentations are 'substantially similar' to the products plaintiff did purchase.")(citations omitted); *Garner v. Glob. Plasma Sols.*, No. 21-665, 2022 WL 742488, at *2 (D. Del. Mar. 10, 2022) (Bibas, J., sitting by designation) ("A plaintiff may have a clear injury from one product.  His ability to represent others who bought different products depends on how similar the products and claims are[.] … That is a certification problem, not a standing one.").   During class certification, as the Court considers questions of commonality and typicality, a more developed record will show whether any or all of the other products are "substantially similar."[4]

### III.   Most of Ms. Binakonsky's claims survive, even if the Court applies the heightened Rule 9(b) pleading standard.

Ms. Binakonsky brings four different claims: violation of the UTPCPL – Pennsylvania's consumer protection statute – breach of express warranty, breach of the implied warranty of merchantability, and unjust enrichment.   Because her principal allegation is deception through misleading labels, the parties disagree at the outset as to whether Ms. Binakonsky needs to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9 to adequately state her claims.   In the end, it doesn't matter; Ms. Binakonsky's core allegations pass muster even under the heightened standard, and those that fail would fail under the normal Rule 8 standard as well.   The Court will address each claim in turn.

---

[4] JM also implies that only the FTC has the authority to bring a claim related to the FDCA, but does not provide caselaw supporting that specific proposition.   ECF 11, p. 16.   And of course, the UTPCPL – under which Ms. Binakonsky brings her claim – has a private enforcement provision.   73 P.S. § 201-9.2(a).   Therefore, this argument fails, and Ms. Binakonsky may bring her claim as an individual.

### A.    Ms. Binakonsky's UTPCPL claim survives.

To state a claim under the UTPCPL, Ms. Binakonsky must allege "conduct that is likely to deceive a customer acting reasonably under similar circumstances," justifiable reliance, and an ascertainable loss. *Seldon v. Home Loan Serv., Inc.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009). The last two elements are easily met here. Ms. Binakonsky alleges that she would not have purchased PureZero products had it not been for JM's misrepresentation that they contained no synthetic ingredients. ECF 1, ¶ 47. This sufficiently alleges justifiable reliance at this stage. *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 222 n.4 (3d Cir. 2008) ("A justifiable-reliance requirement…requires the plaintiff…[to] show that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the misrepresentation."); *Gregory v. Metro Auto Sales, Inc.*, 158 F. Supp. 3d 302, 308 (E.D. Pa. 2016) ("Plaintiff avers that [defendant] intentionally omitted material facts about the vehicle he hoped to buy, and that such omissions caused him to proceed with the purchase. This is enough to survive the present motion [to dismiss]."). And the price Ms. Binakonsky paid for the product – or spending money she otherwise would not have spent – constitutes ascertainable loss. *Lisowski*, 501 F. Supp. 3d at 338. Therefore, the only element in question is whether JM's conduct, as alleged, could plausibly be called deceptive.

On this front, Ms. Binakonsky alleges that the PureZero labels misled her and others into thinking that the products contained no synthetic ingredients. *E.g.*, ECF 1, ¶ 4.[5] She cites several consumer studies to that effect. *E.g.,* ECF 1, ¶ 2. JM

---

[5] JM contends that these allegations are not specific enough to meet the Rule 9(b) heightened pleading standard. The Court disagrees. One core purpose of Rule 9(b) is "to place the defendants on notice and enable them to prepare meaningful responses." *Dumont v. Reily Foods Co.*, 934 F.3d 35, 39 (1st Cir. 2019). Therefore, Rule 9(b) generally requires "the who, what, where, and when of the allegedly misleading representation." *Id.* at 38. Here, Ms. Binakonsky presented the purportedly misleading PureZero labels themselves, which is sufficient to place JM

responds that Ms. Binakonsky's claim of deception is not plausible as a matter of law because the label would not mislead a reasonable consumer. Specifically, JM contends that because the label specifically disclaims what is *not* included – ZERO Sulfates, Parabens, etc. – consumers had sufficient notice of what "natural" meant in context. ECF 11, p. 11. But "the question of whether a reasonable consumer could be expected to take investigative steps to educate himself or herself rather than rely on the prominent display of the word 'natural' on the front of the package is, at this stage, a factual question to be addressed on a full record by the factfinder." *Munsell*, 463 F. Supp. 3d at 52. The Court cannot foreclose the possibility that a reasonable consumer might be misled by the PureZero labeling, particularly given the prominence of the "natural" labeling and imagery on the front of the bottle.

It certainly is plausible that the average consumer relies heavily on prominent labels on the front of a product and does not scrutinize the fine-print list of ingredients on the back. *See* ECF 1, ¶¶ 27-28. And even if they do examine the back labeling, it's plausible that most of them don't have the chemistry expertise to know whether any of the listed ingredients are synthetic. *Id.* Many courts have held similarly. *E.g.*, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008) ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the

---

on notice as to the alleged deception; any additional information, at least based on the theories in the complaint, would not make a material difference in JM's ability to defend its conduct. *E.g.*, *id.* (when a customer claimed that the 'Hazelnut Crème' label on a coffee container was misleading, "[defendants] are the 'who'; the 'Hazelnut Crème' statement is the 'what'; the label is there 'where'; and the occasion on which [Plaintiff] purchased the coffee is the 'when.'"). So Ms. Binakonsky does not need to allege a specific date and location of purchase, or particular type of reliance. *Id.*; *Van Koenig v. Snapple Bev. Corp.*, 713 F. Supp. 2d 1066, 1077 (E.D. Cal. 2010) (plaintiffs submitting the allegedly misleading labels on products they purchased was enough to "establish the time, place, and specific content requirements of Rule 9(b).").

ingredient list in small print on the side of the box. … We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.  Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging."); *Dumont,* 934 F.3d at 40-41 ("One might presume that a reasonable consumer…would check the list of ingredients. On the other hand, perhaps a reasonable consumer would find the product name sufficient assurance so as to see no need to search the fine print of the back of the package[.]"); *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) ("The disclosures on the front of the box…are nonetheless misleading because they falsely imply that the grain content is entirely or at least predominantly whole grain, whereas in fact, the grain component consisting of enriched white flour substantially exceeds the whole grain portion.").

JM further suggests that its labels would not mislead the average consumer because consumers expect some synthetic ingredients to be present in hair care products.  ECF 14, p. 5 n.1.  Being generous, that might be true for some consumers.  But most consumers do not have expertise in hair-care product ingredients or specialized knowledge of chemistry.  *Compare Mantikas*, 910 F.3d at 638 ("[A] reasonable consumer would not be misled…because such a consumer would be familiar with the fact of life that a cracker is not composed primarily of fresh vegetables." (cleaned up)).

Because Ms. Binakonsky's interpretation of "natural" is plausible, it is not appropriate to dismiss it as unreasonable as a matter of law.

**B.    The unjust enrichment claim survives.**

"[A]n unjust enrichment claim may be pled as a companion, not an alternative, to a claim of unlawful or improper conduct as defined by law − *e.g.*, a tort claim." *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 493 (E.D. Pa. 2016).  It can,

alternatively, be pled on a theory of quasi-contract.  The claim in this case is clearly pled "as a companion to [Ms. Binakonsky's] deceptive conduct and misrepresentation of UTPCPL claims."  *Lisowski*, 50 F. Supp. 3d at 339.  In support of her unjust enrichment claim, Ms. Binakonsky alleges that she unfairly conferred benefits on JM because of its "deceptive advertising and marketing," including its misleading labels. ECF 1, ¶ 116, and JM has since "improperly" retained those benefits despite its alleged knowledge that its "representations were false."  *Id.* at ¶ 118.  The use of terms like "deceptive" and "false representations" "smack of tort."  *Whitaker*, 198 F. Supp. 3d at 494.

In Pennsylvania, "[w]here the unjust enrichment claim rests on the same improper conduct as the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying claim."  *Id.* at 493.  Because Ms. Binakonsky's underlying UTPCPL claim survives, her unjust enrichment claim also survives.  *Lisowski*, 501 F. Supp. 3d at 339.

### C.   The breach of express warranty claim survives.

Next, Ms. Binakonsky alleges that JM breached an express warranty by representing that its products were "natural" when they in fact were not natural; that is, the products did not conform to the description.  ECF 1, Count II.  JM responds that "the phrase 'natural hair care' does not expressly affirm that *all* of the ingredients in *every* product were naturally derived."  ECF 11, p. 17.  Instead, it argues that "'natural' is ambiguous and thus[] cannot be inferred as an affirmation of fact."  *Id.*  JM also argues that "the use of 'natural hair care' is an expression of opinion[.] ... It was JM Brands' opinion that 'natural hair care' accurately described its products being free of these ingredients."  *Id.* at pp. 17-18.

Like the UTPCPL claim, whether this claim survives turns on whether it is reasonable, as a matter of law, for a consumer to interpret the PureZero label as a warranty that the product contains no synthetic ingredients, rather than an

expression of mere opinion.  And like the UTPCPL claim, the Court finds that the allegations in the complaint establish that a reasonable consumer could plausibly interpret the labeling as affirmatively warranting a completely natural product – *i.e.*, one that is synthetic-free.

Moreover, the use of "natural" here was not a mere expression of opinion or "puffery" as JM contends.  *Id.* at p. 18.  Puffery is "subjective claims about products, which cannot be proven either true or false."  *Duran v. Henkel of Am., Inc.*, 450 F. Supp 3d. 337, 347 (S.D.N.Y. 2020).  Unlike subjective terms such as "best," "amazing," or "luxurious," whether or not something is scientifically "natural" versus synthetically derived is something that could be proven or disproven –  depending on the definition of 'natural' adopted.

Accordingly, Ms. Binakonsky's express warranty claims survive.

**D.    The breach of implied warranty of merchantability claim fails.**

Unlike the prior claims, Ms. Binakonsky's claim that JM breached an implied warranty of merchantability at Count III of the Complaint does not state a plausible claim, and therefore must be dismissed.

"In order to be merchantable, goods must be fit for the ordinary purposes for which such goods are used."  *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992).  The purpose of implied warranty claims is "to protect buyers from loss where the goods purchased are below commercial standards[.]"  *Id.*

The problem with Ms. Binakonsky's claim is that she does not allege that the products were below commercial standards or did not properly function – *i.e.*, that they did not clean her hair.  Instead, she alleges that class members "relied on Defendant's skill and judgment in selecting Defendant's Products to purchase," and "Defendant's Products do not meet the quality of their description because they contain multiple synthetic ingredients."  ECF 1, ¶¶ 102, 105.  Such allegations fall short.  *Loduca v. WellPet LLC*, 549 F. Supp. 3d 391, 405 (E.D. Pa. 2021) ("Thus, to

establish a breach of this warranty, a plaintiff must show, among other things, that the product at issue was defective, and this burden may be met by proving that the product functioned improperly in the absence of abnormal use and reasonable secondary causes." (cleaned up) (citing *Am. Atelier Inc. v. Materials, Inc.*, 675 F. App'x 149, 152 (3d Cir. 2017))).[6]

### E.   Ms. Binakonsky's references to "advertising" and "marketing" do not state claims.

Most of Ms. Binakonsky's complaint centers on the PureZero product labels found in stores.  But she periodically references other "advertising" and "marketing materials" or "practices" in the context of pleading her claims.  *E.g.,* ECF 1, ¶¶ 3, 4, 5, 8, 9, 11, 30, 100, 115, 116.  She provides no specifics as to what these marketing materials were or whether she even viewed them.  Under both Rule 8 and Rule 9, this is deficient.  Without more details, JM does not have adequate notice as to which misleading or deceptive advertising and marketing it must defend, and the Court does not have enough information to decide whether deceptive conduct plausibly occurred.  *See Janney*, 944 F. Supp. 2d at 818 (dismissing claims as to advertising when "the [amended complaint] does not specify what the exact false or misleading statements are, why the statements are false and misleading, where exactly the statements are located, or which statements plaintiffs relied on.").

Accordingly, the surviving counts in this case are limited to claims based solely on product labels.  Any aspects of those claims that are based on advertising or marketing outside of the product label will be dismissed.

---

[6] Ms. Binakonsky points to UCC § 2-314(2), which states that goods must be of "fair average quality within the description" and "conform to the promises or affirmations of fact made on the container or label if any" is included.  ECF 13, pp. 21-22.  But she does not cite any binding cases where non-conformity with the description – without more – was a basis for breach of implied warranty.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to dismiss is hereby **GRANTED** in part and **DENIED** in part. Ms. Binakonsky's UTPCPL, unjust enrichment, and breach of express warranty claims may proceed. But her breach of implied warranty claim (Count III), along with any aspects of the counts in the Complaint based on "advertising" and "marketing" materials (beyond the PureZero labels), will be dismissed. This dismissal is without prejudice, because the Court cannot find at this juncture that amendment would be futile. An appropriate order follows.

DATE: July 14, 2022                                    BY THE COURT:

                                                       /s/ *J. Nicholas Ranjan*
                                                       United States District Judge