# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RACHEL D. BINAKONSKY, on behalf of herself and all others similarly situated,

        Plaintiff,

    v.

JM BRANDS, INC.

        Defendant.

ELECTRONICALLY FILED

C.A. NO. 2:21-cv-00444-NR

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

## FIRST AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

FACTUAL BACKGROUND ...............................................................................................4

JURISDICTION AND VENUE ..........................................................................................15

PARTIES.............................................................................................................................15

FACTS COMMON TO ALL CAUSES OF ACTION .......................................................17

CLASS DEFINITIONS AND ALLEGATIONS.................................................................19

CAUSES OF ACTION.......................................................................................................23

    COUNT I ............................................................................................................23
    Violation of State Consumer Protection Statutes................................................23
    COUNT II ...........................................................................................................23
    Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, ..........23
    COUNT III ..........................................................................................................27
    Breach of Express Warranty ...............................................................................27
    COUNT IV...........................................................................................................28
    Unjust Enrichment ..............................................................................................28

RELIEF DEMANDED ......................................................................................................30

JURY DEMAND ...............................................................................................................31

Plaintiff Rachel Binakonsky brings this action on behalf of herself and all others similarly situated against Defendant JM Brands LLC. Plaintiff makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## **INTRODUCTION**

1.     In an attempt to capitalize on consumer demand for health-focused and "natural" personal care products, Defendant sell its Purezero® brand of products through major retailers across the United States of America. However, as Defendant knows, the vast majority of their "natural" products contain synthetic and abrasive chemical ingredients. Thus, the statements on Defendant's product labels claiming that the products are "natural" are false, misleading, and designed to deceive consumers into paying a price premium and choosing its products over a competitor's product.

2.     This action seeks to remedy the deceptive and misleading business practices of Defendant with respect to its marketing and sales of the products outlined in **Exhibit A** (hereinafter "Products") throughout the Commonwealth of Pennsylvania and the United States of America. [1]

---

[1] The Products definition may be modified throughout the course of this action. Defendants may discontinue offering some products and regularly introduces new products that are also falsely and misleadingly labeled "Natural." Defendants may also market and sell additional substantially similar products of which Plaintiff is unaware. Plaintiff will ascertain the identity of these additional products through discovery.

3.      Defendant manufactures, sells, and distributes the Products using marketing and advertising campaigns focused on claims that appeal to health-conscious consumers, i.e. that its Products are "natural."

4.      These representations lead consumers to believe that the Products contain natural ingredients. However, Defendant's Products' labels are false, deceptive, and misleading because the Products contain multiple synthetic ingredients.

5.      Defendant's marketing practices specifically target consumers that desire natural products.

6.      For example, in a press release from May 2019, Co-Founder Jordan Christopher states, "We started with a simple concept that clean beauty should be affordable. Our products use clean, yet efficacious, ingredients. Our products are benchmarked against salon formulas and each has a designer fragrance. The Purezero® pricing strategy allows all consumers access to both premium and natural haircare products."[2]

7.      Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products are "natural" when purchasing the Products.

---

[2] Purezero® Natural Haircare Brings Premium Clean Beauty to Everyday Consumer, May 30, 2019, http://www.pr.com/press-release/786143.

8.      This deception is not limited to Defendant's labeling and is omnipresent in Defendant's marketing efforts that further perpetuate this deceptive "natural" myth.

9.      Building upon this deception by labeling the Products as "Natural," Defendant creates the impression amongst reasonable consumers that its Products are natural. However, Defendant fails to adequately inform consumers that the Products contain numerous synthetic ingredients. Indeed, Defendant only lists the synthetic, unnatural ingredients in the Products on the back of the Product packaging in small, hard-to-read print and, even then, fails to inform consumers that many of the ingredients listed are synthetic. Consumers are not experts in the chemical make-up or names of the ingredients disclosed in fine print on the back of the labels and, based on the "natural" representations headlining the Products' labeling, reasonably believe that the Products contain only natural ingredients.

10.     These deceptive "Natural" representations appear prominently on the Products' label. For example, on the principal display panel of all of Defendant's Products, "Natural Hair Care" is placed prominently at the top of the label in all capital letters with multiple images of plants.

11.     Contrary to representations on the Products' labeling, instead of receiving natural products, consumers receive products with synthetic ingredients.

12.     Plaintiff and Class Members paid a premium for the Products over and above comparable products that did not purport to be "natural." Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's

misrepresentations that they are "natural" Plaintiff and Class Members suffered an injury in the amount of the purchase price and/or the premium paid.

13.     Defendant's conduct violated and continues to violate the Unfair Trade Practices and Consumer Protection Law for the Commonwealth of Pennsylvania. Defendant breached and continues to breach its express warranties regarding the Products. Further, Defendant has been and continues to be unjustly enriched. Accordingly, Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

14.     Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products and everyday household products.[3] Companies such as the Defendant have capitalized on consumers' desires for purportedly "natural products." Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients. In 2015, sales of natural products grew 9.5% to $180 billion.[4] Reasonable consumers, including Plaintiff and

---

[3] Julianna M. Butler & Christian A. Vossler, *What is an Unregulated and Potentially Misleading Label Worth? The case of "Natural"-Labelled Groceries*, Environmental & Resource Economics, Springer; European Association of Environmental and Resource Economists, vol. 70(2), pages 545-564 (2017). "Thus, one finding is that most people – 87% of our sample – do appear to attribute meaning to "natural" labelling. The vast majority of respondents stated a belief that "natural" signals no artificial flavors, colors and/or preservatives." *Id.*
[4] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ*, FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-

Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

15.     Federal agencies have warned companies that they must ensure that they can substantiate "natural" claims.

16.     The Food and Drug Administration warns that any "natural" labeling on cosmetic products must be "truthful and not misleading."[5]

17.      Further, the Federal Trade Commission has warned companies that the use of the term "natural" may be deceptive:

> Marketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers. If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact.[6]

18.     In April 2016, the FTC settled with four manufacturers and filed a complaint against a fifth company for representing that its products were "natural" when they contained Phenoxyethanol, Ethylhexylglycerin, and Caprylyl Glycol. The

---

trendspotting-organics-natural-claims/(page)/6 ; *see also* Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www. investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp  (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025).

[5] U.S. Food and Drug Administration, Small Business & Homemade Cosmetics: Fact Sheet, available at http://www.fda.gov/Cosmetics/ResourcesForYou/Industry/ucm388736.htm#7.

[6] 75 Fed. Reg. 63552, 63586 (Oct. 15, 2010).

manufacturers agreed to cease marketing the products in question as being "natural."[7]

19.    Despite the Products containing a number of synthetic ingredients, including the aforementioned Phenoxyethanol, Ethylhexylglycerin, and Caprylyl Glycol, Defendant markets the Products as being "Natural."

20.    Defendant's representations that the Products are "Natural" are false, misleading, and deceptive because the Products contain multiple ingredients that are, as set forth and described below, synthetic.

   a. **Phenoxyethanol** is a synthetic substance associated with depressing the central nervous system, vomiting, and diarrhea.[8] This synthetic chemical concerned the FDA, and the agency warned consumers against using on nursing infants because it "can depress the central nervous system" and "may cause vomiting and diarrhea, which can lead to dehydration in infants."[9] Concern for the use of this synthetic ingredient is not restricted to the United States, and after concerns were raised by the European Commission's Scientific Committee on

---

[7] *Four Companies Agree to Stop Falsely Promoting Their Personal-Care Products as "All Natural" or "100% Natural"; Fifth is Charged in Commission Complaint*, (April 2016), https://www.ftc.gov/news-events/press-releases/2016/04/four-companies-agree-stop-falsely-promoting-their-personal-care (last visited Mar. 17, 2021).

[8] 21 C.F.R. §172.515 *and FDA Consumer Update: Contaminated Nipple Cream*, (May 2008), https://web.archive.org/web/20140712202507/https://www.fda.gov/ForConsumers/ConsumerUpdates/ucm049301.htm (last visited Mar. 17, 2021).

[9] U.S. Food and Drug Administration, For Consumers, *Contaminated Nipple Cream*, https://web.archive.org/web/20140712202507/https://www.fda.gov/ForConsumers/ConsumerUpdates/ucm049301.htm (last visited Mar. 17, 2021).

Consumer Safety, France prohibited the labeling and marketing of products containing Phenoxyethanol for use on children that are three years old and younger.[10]

b. **Polysorbate-20** is a synthetic emulsifier and/or surface-active agent.[11]

c. **Cyclopentasiloxane** is a synthetic ingredient that is known to be flammable.[12]

d. **Cetearyl Alcohol** is a mixture of cetyl and stearyl alcohols. Cetyl alcohol is classified as synthetic by federal regulations. It is chemically synthesized by, for example: catalytic hydrogenation of the triglycerides obtained from coconut oil or tallow, oxidation of a chain growth product of ethylene oligomerized on a triethylaluminum catalyst, reaction of palmitoyl chloride and sodium borohydride, reaction of methylthiopalmitate plus Raney nickel. Stearyl alcohol is also produced synthetically.

e. **Cetyl Alcohol** is a synthetic ingredient. Long term exposure and inhalation of Cetyl Alchol has been associated with the death of animals in laboratory studies.[13]

---

[10] Agence Nationale de Sécurité du Médicament et des Produits de Santé, Decision of 13 Mars 2019, *available at* https://www.ansm.sante.fr/content/download/158253/2075101/version/1/file/DPS_Phenoxyethanol-200319.pdf.

[11] *See* 21 C.F.R. § 172.515 and 21 C.F.R. § 178.3400.

[12] *See Chandler v. Wal-Mart Stores Inc.*, 498 S.W.3d 766, 767 (Ark. App. 2016).

[13] Wilbur Johnson, *Final Report on the Safety Assessment of Cetearyl Alcohol, Cetyl Alcohol, lsostearyl Alcohol, Myristyl Alcohol, and Behenyl Alcohol*, JOURNAL OF

    f. **Polyquaternium-10** is a synthetic ingredient.[14]

    g. **Polyquaternium-37** is a synthetic ingredient.[15]

    h. **Propylene Glycol Dicaprylate/Dicaprate** is a synthetic skin conditioning agent.[16]

    i. **PPG-1 Trideceth-6** is a synthetic water repellant.[17]

    j. **Peg-120 Methyl Glucose Dioleate** is a synthetic viscosity agent.[18]

    k. **Dimethicone** is a synthetic ingredient.[19]

    l. **Dimethiconol** is a synthetic ingredient that is known to be flammable.[20]

    m. **Amodimethicone** is a synthetic silicon based polymer.

    n. **Glycerin** is a factory-produced texturizer created by a complex process, used as a filler and thickening agent. It is produced through

---

THE AMERICAN COLLEGE OF TOXICOLOGY Volume 7, Number 3, 1988, https://www.cir-safety.org/sites/default/files/115_buff3a_suppl.pdf.

[14] 24 No. 3 FDA Advertising & Promotion Manual Newsl. 13.

[15] 24 No. 3 FDA Advertising & Promotion Manual Newsl. 13.

[16] Wilbur Johnson, *Final Report on the Safety Assessment of Propylene Glycol (PG) Dicaprylate, PG Dicaprylate/Dicaprate, PG Dicocoate, PG Dipelargonate, PG Isostearate, PG Laurate, PG Myristate, PG Oleate, PG Oleate SE, PG Dioleate, PG Dicaprate, PG Diisostearate, and PG Dilaurat*, International Journal of Toxicology 1999, Vol. 18(Supplement 2):35-52, https://journals.sagepub.com/doi/pdf/10.1177/109158189901800207.

[17] Monica M. Fiume, *Safety Assessment of Alkyl PEG/PPG Ethers as Used in Cosmetics*, International Journal of Toxicology 2016, Vol. 35(Supplement 1) 60S-89S, https://journals.sagepub.com/doi/pdf/10.1177/1091581816650626.

[18] Gottschalck, T. E. and Breslawec, H. P. International Cosmetic Ingredient Dictionary and Handbook. 14 ed. Washington, DC: Personal Care Products Council, 2012.

[19] 24 No. 3 FDA Advertising & Promotion Manual Newsl. 13.

[20] *See Chandler v. Wal-Mart Stores Inc.*, 498 S.W.3d 766, 767 (Ark. App. 2016).

various extensive means using synthetic and/or hazardous substances, including epichlorohydrin (hazardous), sodium hydroxide (synthetic and hazardous), allyl alcohol (synthetic and hazardous), hydrogen peroxide (synthetic), and peracetic acid (synthetic).[21]

o. **Ethylhexylglycerin** is a synthetic derived form of vegetable glycerin.

p. **Fragrance** is a synthetic ingredient that includes unknown and unregulated chemical compounds. A simple declaration of "fragrance" on the ingredients list can include a composition consisting of as many as 200 ingredients.

21.     Other ingredients in the Products may also be not natural as well. Plaintiff's investigation is ongoing and will seek to amend the Complaint to specify other potential unnatural ingredients in the future.

22.     Whether Defendant's labeling of the Products as "Natural" is deceptive is judged by whether it would deceive or mislead a reasonable person. To assist in ascertaining what a reasonable consumer believes the term natural means, one can look to regulatory agency guidance.

23.     In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural). In accordance with this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is manufactured, produced, or extracted

---

[21] *See* 7 C.F.R. §206.605.

from a natural source (i.e. naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter.[22]

24.     Surveys and other market research, including expert testimony Plaintiff intends to introduce, will demonstrate that the term "natural" is misleading to a reasonable consumer because the reasonable consumer believes that the term "natural," when used to describe goods such as the Products, means that the goods are free of synthetic ingredients. By way of example, according to a consumer survey, "[e]ighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial ingredients."[23]

25.     A reasonable consumer's understanding of the term "Natural" comports with that of federal regulators and common meaning. For example, a

---

[22] U.S. Department of Agriculture, Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic, March 26, 2013, available at https://web.archive.org/web/20140818174458/http://www.ams.usda.gov/AMSv1.0/getfile?dDocName=STELPRDC5103308.

[23] Urvashi Rangan, Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims, 16 C.F.R. Part 260, Notice of the Federal Trade Commission (2010), available at https://www.ftc.gov/sites/default/files/documents/public_comments/guides-use-environmental-marketing-claims-project-no.p954501-00289%C2%A0/00289-57072.pdf (also accessible as Comment 58 at http://www.ftc.gov/policy/publiccomments/initiative-353).

recent economic study focused on product labeling found, "The vast majority of respondents stated a belief that 'natural' signals no artificial flavors, colors and/or preservatives."[24] In other words, the reasonable consumer understands the representation that a product is "Natural" to mean that it does not contain any synthetic or artificial ingredients.[25]

26.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale. Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

27.     Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer. That is why, even though the ingredients listed above are identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

28.     Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendant's prominent front-of-the-product claims, representations, and warranties that the Products are "Natural."

---

[24] Julianna M. Butler & Christian A. Vossler, *What is an Unregulated and Potentially Misleading Label Worth? The case of "Natural"-Labelled Groceries*, Environmental & Resource Economics, Springer; European Association of Environmental and Resource Economists, vol. 70(2), pages 545-564 (2017).
[25] *Id.*

29.     Defendant did not disclose that the above listed ingredients are synthetic ingredients anywhere on the product. A reasonable consumer understands Defendant's "Natural" claims to mean that the Products are "Natural" and do not contain synthetic ingredients.

30.     Plaintiff and Class Members described below paid a premium for Defendant's Products over comparable products that did not purport to be natural products. Contrary to representations on the Products' labeling and Defendant's marketing thereof, instead of receiving natural products, consumers receive products with unnatural and/or synthetic ingredients.

31.     Defendant has thus violated, *inter alia*, the Unfair Trade Practices and Consumer Protection Law for the Commonwealth of Pennsylvania by deceptively and falsely representing to Plaintiff that the Products are "natural," when in fact they are made with synthetic ingredients.

32.     Consumers rely on label representations and information in making purchasing decisions.

33.     The marketing of the Products as "Natural" in a prominent location on the labels of all of the Products, throughout the Class Period, evidences Defendant's awareness that "Natural" claims are material to consumers.

34.     Further, in press releases, Defendant emphasizes its focus on the growing demand for natural personal care products.[26]

---

[26] Purezero® Natural Haircare Brings Premium Clean Beauty to Everyday Consumer, May 30, 2019, http://www.pr.com/press-release/786143.

35.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

36.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

37.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled the Plaintiff and the Class Members.

38.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products labeled "Natural" over comparable products not so labeled.

39.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured the Plaintiff and the Class Members in that it:

    a.  Paid a sum of money for Products that were not what Defendant represented;

    b.  Paid a premium price for Products that were not what Defendant represented;

    c.  Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted; and

    d.  Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

40.    Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

41.    Plaintiff and the Class Members paid for Products that were "Natural " but received Products that were not "Natural." The products Plaintiff and the Class Members received were worth less than the products for which they paid.

42.    Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing a "Natural" label.

43.    Plaintiff and the Class Members all paid money for the Products. However, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## JURISDICTION AND VENUE

44.     This Court has personal jurisdiction over the Defendant. Defendant purposefully avails itself of the Pennsylvania consumer market and distributes the Products to many locations within this District and hundreds of retail locations throughout the Commonwealth of Pennsylvania, where hundreds of consumers purchase the Products every month.

45.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

46.     Venue is proper in this District under 28 U.S.C. § 1391(a). Plaintiff's purchases of Defendant's Products, substantial acts in furtherance of the alleged improper conduct, including the dissemination of false, deceptive, and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District and the Defendant conducts business in this District.

## PARTIES

47.     Plaintiff is a citizen of Pennsylvania, residing in Allegheny County. Within the past two years, she made purchases of Defendant's Products from

various physical retail stores in Pennsylvania. Products purchased by Plaintiff within the relevant time period include, at a minimum, Purezero® Biotin Strengthening Shampoo and Purezero® Biotin Strengthening Conditioner.  Prior to purchasing the Products, Plaintiff saw and read the front of the product packaging, and relied on the representation and warranty that the product was "natural." Plaintiff understood these representations to mean that Defendant's Products did not contain synthetic chemicals. Plaintiff purchased Defendant's Products at a substantial price premium, most recently in December 2019, and would not have purchased the products had she known that the labeling and marketing she relied on was false, misleading, and deceptive. Plaintiff would purchase the Products again in the future if Defendant changed the composition of the Products so that it conformed to its "natural" labeling.

48.   Defendant JM Brands LLC is a a Florida company with its principal place of business located in St. Pete Beach, FL.

    a.   Defendant produces consumer products that it markets and distributes to consumers and retail stores across the United States including stores physically located in the Commonwealth of Pennsylvania and within this district. Defendant additionally markets and distributes products through e-commerce stores that ship to consumers in this district.

49.   Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee,

supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

50.     Whenever reference is made in this Complaint to any representation, act, omission, or transaction of a defendant, that allegation shall mean that the defendant did the act, omission, or transaction through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

## FACTS COMMON TO ALL CAUSES OF ACTION

51.     Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in cosmetic products. As a result, consumers are willing to pay, and have paid, a premium for products labeled "natural" over ordinary products that contain synthetic ingredients.

52.     The FTC has warned marketers that the use of the term "natural" may be deceptive: Marketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers. If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact.[27]

53.     Likewise, the Food and Drug Administration ("FDA") considers the term "natural" to be truthful and non-misleading only when the product lacks

---

[27] 75 Fed. Reg. 63552, 63586 (Oct. 15, 2010).

synthetic ingredients, and it warns that any "natural" labeling on cosmetic products must be "truthful and not misleading."[28]

54.    The Products are manufactured and marketed by Defendant and sold in drug stores, grocery stores, and other retail stores nationwide.

55.    The front label of every one of the Products states prominently the words "Natural Hair Care" in all capital letters and the label includes multiple large images of plants.

56.    For example, the following image shows the representation "Natural Hair Care" prominently made on the front of the Hemp with Bamboo Extract Renewing Shampoo:



---

[28] U.S. Food and Drug Administration, Small Business & Homemade Cosmetics: Fact Sheet, available at http://www.fda.gov/Cosmetics/ResourcesForYou/Industry/ucm388736.htm#7.

57.     Based on the language that appears on each product, Plaintiff reasonably believed that Products contained only natural ingredients.

58.     The phrase "Natural Hair Care" is a representation to a reasonable consumer that the Products contain only natural ingredients. The phrase is misleading and deceptive to a reasonable consumer because the Products actually contain multiple synthetic ingredients.

59.     Defendant knew that consumers will pay more for a product marketed as "Natural," and intended to deceive Plaintiff and putative Class Members by labeling and marketing its Products as purportedly natural.

## CLASS DEFINITIONS AND ALLEGATIONS

60.     Plaintiff, pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), brings this action on behalf of the following classes:

a.  Multi-State Consumer Class: All persons in the States of California, Florida, Illinois, Massachusetts, Minnesota, Missouri, New Jersey, New York, Pennsylvania, Oregon, and Washington who purchased the Products.[29]

---

[29] The States in the Multi-State Consumer Class are limited to those States with similar consumer protection laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. § 501.201, et seq.); Illinois (815 ILCS 505/1, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws § 445.901, et seq.); Minnesota (Minn. Stat. § 325F.67, et seq.); Missouri (Mo. Rev. Stat. 407.010, et seq.); New Jersey (N.J. Stat. § 56:8-1, et seq.); New York (N.Y. Gen. Bus. Law § 349, et seq.); Pennsylvania (73 Pa. Stat. Ann. §§ 201-1 et seq.); Oregon (Or. Rev. Stat. §§ 646.605, et seq.); and Washington (Wash Rev. Code § 19.86.010, et seq.).

b.  Pennsylvania Subclass: All persons who purchased Defendant's Products within the Commonwealth of Pennsylvania and within the applicable statute of limitations period.

c.  Nationwide Class: All persons who purchased Defendant's Products within the United States and within the applicable statute of limitations period (collectively, the "Classes" and "Class Members").

61.  Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers, and directors, those who purchased the Products for resale, all persons who make a timely election to be excluded from the Classes, the judge to whom the case is assigned and any immediate family members thereof.

62.  The members of the Classes are so numerous that joinder of all Class Members is impracticable. Defendant has sold, at a minimum, tens of thousands of units of the Products to Class Members.

63.  There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class Members include, but are not limited to the following:

d.  whether Defendant misrepresented material facts concerning the Products on the label of every product;

e.  whether Defendant misrepresented material facts concerning the Products in print and digital marketing of every product;

f.  whether Defendant's conduct was unfair and/or deceptive;

20

g.  whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon it by Plaintiff and the classes;

h.  whether Plaintiff and the Classes are entitled to equitable and/or injunctive relief;

i.  whether Defendant breached express warranties to Plaintiff and the Classes;

j.  whether Plaintiff and the classes have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

64.  Plaintiff's claims are typical of those of other Class Members because Plaintiff, like all members of the classes, purchased Defendant's Products bearing the natural and representations and Plaintiff sustained damages from Defendant's wrongful conduct.

65.  Plaintiff will fairly and adequately protect the interests of the classes and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the classes.

66.  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small

compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

67.    The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

68.    The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the classes even where certain Class Members are not parties to such actions.

## CAUSES OF ACTION

### COUNT I
### Violation of State Consumer Protection Statutes
### (On Behalf of the Multi-State Consumer Class)

69.     Plaintiff repeats and realleges each and every allegation above as if set forth herein.

70.     The Consumer Protection Acts of the States in the Multi-State Consumer Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

71.     Defendant intended that Plaintiff and the other members of the Multi-State Consumer Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by its deceptive conduct.

72.     As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and other members of Multi-State Consumer Class, have sustained damages in an amount to be proven at trial.

### COUNT II
### Violation of Pennsylvania Unfair Trade Practices and Consumer
### Protection Law,
### 73 Pa. Cons. Stat. §§ 201-1 *et seq.*

73.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

74.     Plaintiff brings this Count individually and on behalf of the members of the Pennsylvania Subclass.

75.     Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1 et seq. (the "UTPCPL") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ."

76.     The UTPCPL specifically defines what constitutes unfair methods of competition and unfair or deceptive acts or practices. Defendant engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade and commerce in violation of 73 Pa. Cons. Stat. § 201-3, including the following:

(a) representing that its goods and services have characteristics, uses, benefits, and qualities they do not have (73 Pa. Cons. Stat. § 201-2(4)(v));

(b) representing that its goods and services are of a particular standard or quality if they are another (73 Pa. Cons. Stat. § 201-2(v)(vii));

(c) advertising its goods and services with intent not to sell them as advertised (73 Pa. Cons. Stat. § 201-2(4)(ix)); and

(d) engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding (73 Pa. Cons. Stat. § 201-2(v)(xxi)).

77.     Defendant is a "person," as meant by 73 Pa. Cons. Stat. § 201-2(2).

78.     Plaintiff and Pennsylvania Subclass Members purchased goods and services in "trade" and "commerce," as meant by 73 Pa. Cons. Stat. § 201-2(3), primarily for personal, family, and/or household purposes.

24

79.    As alleged more fully above, Defendant has violated the Unfair Trade Practices and Consumer Protection Law by misleadingly, deceptively, and falsely representing to Plaintiff and the other members of the Pennsylvania Subclass that the Products are "Natural" when in fact they are made with synthetic ingredients.

80.    Defendant's omissions and misrepresentations included lying about the quality of its Products because they include synthetic ingredients. Defendant additionally engaged in deceptive conduct which created the likelihood that Plaintiffs would misunderstand the nature of the Products when Defendant represented that its Products were natural when Defendant knew most consumers would reasonably interpret this phrase as free of synthetic ingredients. Defendant's Products do not conform as they are warranted and represented.

81.    Defendant knew or should have known that when the Products left its control, that they were not in conformity or consistent with representations on the labels. Accordingly, Defendant's Products did not provide the represented and warranted benefits.

82.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

83.    Defendant intended that Plaintiff and other Class Members rely on its omissions and misrepresentations, and this reliance was crucial to Defendant commanding a premium price for the Products.

84.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and the Pennsylvania Subclass have suffered and will continue

to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Products.

85.     Plaintiff and other members of the Pennsylvania Subclass lost money or property as a result of Defendant's violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products were not "Natural"; (b) they paid a substantial price premium compared to other consumer products due to Defendant's misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

86.     Defendant deceived and continues to deceive consumers about the quality and ingredients of the Products. This conduct constitutes unfair or deceptive acts or practices within the meaning of the UTPCPL. This illegal conduct by Defendant is continuing, with no indication that it will cease.

87.     Accordingly, Defendant's deceptive, false and misleading statements deceived Plaintiff and Class Members and a substantial segment of the target consumer audience and improperly influenced consumers' purchasing decisions, as Plaintiff and Class Members relied on such misrepresentations in violation of the UTPCPL.

88.     Plaintiff and the Pennsylvania Subclass seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $100 (whichever is greater), treble damages, attorneys' fees and costs, and any additional relief this Court deems necessary or proper.

## COUNT III
## Breach of Express Warranty

89.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

90.    Plaintiff bring this claim individually and on behalf of the members of the proposed Classes against the Defendant.

91.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted and represented that the Products are "Natural."

92.    Defendant provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are natural.

93.    Defendant made these express warranties regarding the Products' quality, ingredients, and fitness for consumption on the Products' packaging in connection with the sale of the Products.

94.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

95.    Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and Class Members regarding the Products, became part of the basis of the bargain between Defendant and Plaintiff and the Classes, thereby creating an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

27

96.     The Products do not conform to the express warranty because they contain ingredients that are unnatural and synthetic.

97.     Prior to the filing of this complaint, Defendant was provided written notice of these breached warranties via the United States Postal Service in March 2021.

98.     Defendant did not respond to this written notice.

99.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and the Class Members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they had known the true facts; (b) they paid a substantial price premium based on Defendant's express warranties; and (c) the Products do not have the characteristics, ingredients, uses, or benefits as promised.

100.    Plaintiff, on behalf of herself and the Class Members, demands judgment against Defendant for compensatory damages for herself and each of the other Class Members, as well as attorneys' fees, interest, and costs.

## COUNT IV
### Unjust Enrichment

101.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

102.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against the Defendant.

103.    At all times relevant hereto, Defendant deceptively marketed, advertised, and sold merchandise to Plaintiff and the Classes.

104.    Plaintiff and Class Members conferred upon Defendant nongratuitous payments for the Products that they would not have if not for Defendant's deceptive Product labels.

105.    Defendant accepted or retained the nongratuitous benefits conferred by Plaintiff and Class Members, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff and Class members were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

106.    At the time of Plaintiff and Class Members' purchases, Defendant knew of the synthetic ingredients used in its Products. Knowing that their representations were false, Defendant sold the Products to Plaintiff and Class Members at a premium price. Accordingly, Defendant continues to retain a benefit improperly obtained to the detriment of Plaintiff and Class Members.

107.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because of Defendant's misrepresentations about the Products, which caused injuries to Plaintiff and Class Members because they would not have purchased the Products if the true facts had been known.

108.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class Members for their unjust enrichment, as ordered by the Court.

## RELIEF DEMANDED

109.    WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Classes and Plaintiffs' attorneys as Class Counsel to represent the members of the Classes;

b.    For an order declaring the Defendant's conduct violates the statutes and laws referenced herein;

c.    For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiff and the Classes for all causes of action;

d.    For an order requiring Defendant to immediately cease and desist from selling its misbranded Products in violation of law; enjoining Defendant from continuing to label, market, advertise, distribute, and sell the Products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

e.    For prejudgment and postjudgment interest on all amounts awarded;

f.  For an order awarding punitive damages;

g.  For an order awarding attorneys' fees and expenses and costs of suit; and

h.  Granting such other relief as the Court deems just and appropriate.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: September 19, 2022

Respectfully submitted,

/s/ Steffan T. Keeton
Steffan T. Keeton, Esq.
stkeeton@keetonfirm.com
Pa. Id. No. 314635

**The Keeton Firm LLC**
100 S Commons, Ste. 102
Pittsburgh, PA 15212
1-888-412-5291

*Attorney for Plaintiff and the Classes*